UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

---

| | |
|---|---|
| CARA MILLER,<br><br>    Plaintiff,<br><br>vs.<br><br>HONKAMP KRUEGER FINANCIAL SERVICES, INC. AND BLUCORA, INC.,<br><br>    Defendants. | Civil Case No. 20-5056<br><br><br>**Amended Complaint for Declaratory Judgment** |

---

Plaintiff Cara Miller, ("Miller") for her Amended Complaint against Defendants Honkamp Krueger Financial Services, Inc. ("Honkamp") and Blucora, Inc. ("Blucora"), states and alleges as follows:

## Nature of Action

1. This action arises under the Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, arising from Miller's desire and intent to enter into and continue an employment relationship with Mariner Wealth Advisors, LLC ("Mariner"). Miller, who on September 4, 2020, terminated her employment with Honkamp, signed an agreement which Honkamp purports hinders her from commencing employment with Mariner because of vague, overbroad and unenforceable post-employment restrictive covenants (the "Agreement", attached hereto as **Exhibit A**, and a superseded "Employment Agreement", contained in correspondence attached hereto as **Exhibit B** and **Exhibit C**). Honkamp has previously indicated it will seek to enforce restrictive covenant agreements it has with its employees should they accept employment elsewhere (and has, at least once, recently done so), and has now indicated it

will seek to enforce the restrictive covenant agreements against Miller, effectively trapping Miller at Honkamp, or forcing her to leave entirely the industry in which she has worked for years. Miller is suffering immediate and irreparable harm based upon Honkamp's belief that the restrictive covenants with Miller are enforceable.

2. By this action, Miller respectfully requests this Court to declare the Agreement's and the Employment Agreement's restrictive covenants are unlawful and unenforceable, and enjoin Honkamp from taking further actions to illegally stifle competition and improperly interfere with Miller's lawful employment relationship with Mariner.

## Parties and Venue

3. Miller is an individual who resides in South Dakota.

4. Upon information and belief, Honkamp is an Iowa corporation with its principal place of business located in Dubuque, Iowa.

5. Honkamp was recently acquired by Blucora as part of a stock purchase.

6. Upon information and belief, Blucora is a Delaware corporation with its principal place of business located in Irving, Texas.

7. This Court has both (1) general personal jurisdiction over Honkamp because it regularly conducts business in the State of South Dakota and has substantial business dealings with individuals located in South Dakota (including an office located in Rapid City); and (2) specific personal jurisdiction over Honkamp because Honkamp employs and has employed

individuals in South Dakota—including Miller, who currently works, and who wishes to work for Mariner, primarily in South Dakota, and who is subject to restrictive covenants with Honkamp which cause harm and injury to Miller in South Dakota.

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. In particular, in her position as a Financial Planning Consultant, Miller makes in excess of $75,000 annually, and the Agreement purports to bar her entirely from continuing in her chosen profession.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Honkamp conducts business in this District and many of the unlawful acts alleged herein occurred in this District.

## Factual Background

10. In approximately April or May 2006, Miller was hired by Honkamp as a Financial Advisor, working in South Dakota. Since approximately 2012, Miller has primarily worked in South Dakota, but also spent time each month working in Colorado. Miller also services clients in Wyoming, though most of her clients are located in Colorado and South Dakota. During the entirety of her work with Mariner, Miller has lived in South Dakota.

11. Honkamp is a financial services firm. According to its website, Honkamp is "a national financial planning firm" that "work[s] with CPA firms and their clients to develop comprehensive financial planning," and

"provides planning services to over 2,500 CPA firms and serves clients in all 50 states."

12. Since the commencement of her employment by Honkamp, Miller has worked for Honkamp to sell financial planning services to individuals principally in South Dakota, Colorado, and Wyoming. These financial planning services include, but are not limited to, fee-based investment management, commission-based investment sales, commission-based insurance sales, and retirement plan services.

13. Previously in connection with her employment with Honkamp, Miller and Honkamp entered in the Employment Agreement on or about May 1, 2006, a true and correct copy of which is contained in Exhibit B and Exhibit C. The Employment Agreement was drafted solely by Honkamp.

14. The Employment Agreement at Section 9 contained certain "Negative Covenants"—including client non-solicitation and non-competition provisions.

15. In connection with her employment with Honkamp, Miller and Honkamp entered into the Agreement Ancillary to Employment (the "Agreement") on or about July 25, 2016, a true and correct copy of which is attached as Exhibit A. The Agreement was drafted solely by Honkamp.

16. The Agreement contains at Section 9 the following language, typically referred to as an "entire agreement" or "integration" clause: "This Agreement supersedes all prior discussions and agreements between Employer and Employee with respect to the subject matter hereof."

17.     As a result of the Agreement's "entire agreement" or "integration" clause, the Employment Agreement was superseded, in whole or in part, and is void.

18.     The Agreement uses the defined term "Employer" to mean Honkamp, and the defined term "Employee" to mean Miller.  *See* Exhibit A.

19.     Pursuant to the Agreement, Honkamp agreed to continue employing Miller and Miller agreed to accept that continuing employment upon the terms and conditions of "an Employment Agreement of even date" with the Agreement.  *See* Exhibit A, Recitals.

20.     The Agreement contains in Section 2 what it calls "Anti-Piracy Covenants" which purport to restrict Miller from engaging in certain activities.  Namely, Section 2(a) (the "Client Non-Solicit") and Section 2(b) (the "Employee Non-Solicit") provide:

> a) Notwithstanding and in addition to the above, during Employee's employment and for a period of two years after he/she ceases to be employed by Employer, Employee shall not, directly or indirectly, solicit, accept or divert business from, provide, or attempt to convert to other methods of using, the same or similar products or services provided by Employer, any client, account or location of Employer with which Employee has had any contact as a result of his/her employment either before or after the date hereof by Employer, including clients with respect to whom Employee performed professional services prior to his/her employment with Employer.
>
> b) During Employee's employment and for a period of two years after he/she ceases to be employed by Employer (for any reason whatsoever), Employee

> shall not, directly or indirectly, solicit for employment or employ any employee of Employer, nor shall Employee, directly or indirectly, offer employment or assist any third party in offering employment (whether as an employee or contractor) to an employee of Employer, without the prior written consent of Employer. For purposes of this paragraph 2(b), an "employee of Employer" shall be any employee of Employer as of the date Employee ceases to be employed by Employer or any such employee of Employer who was employed by Employer during the one-year period prior to Employee's termination of employment with Employer.

21. The Client Non-Solicit purports to nonsensically restrict Miller from soliciting "any client, account or location of" Honkamp. It is unclear how Miller could possibly solicit a "location" of Honkamp, be restricted from doing so, or have any idea what that restriction means.

22. Upon information and belief, and to the extent the meaning of the Client Non-Solicit restrictions can be surmised, the Client Non-Solicit purports to restrict Miller after her employment terminates from soliciting or even accepting business from (without actively soliciting) any client with whom Miller "has had any contact as a result of [her] employment" by Honkamp—regardless the content, duration, or significance of that "contact"; whether that "contact" was initiated by Miller; whether that "contact" resulted in any business to Honkamp; whether Miller has any knowledge (confidential or otherwise) whatsoever regarding that client; whether Miller garnered any goodwill with that client as a result of that "contact"; or whether that client, based on his/her own voluntary and personal election

about where and from whom to receive financial services, seeks to obtain services from Miller.

23. Additionally, the Agreement purports to prohibit Miller from *both* soliciting and accepting business from the clients with which she had "any contact as a result of [her] employment" by Honkamp.

24. The Agreement does not otherwise define "client", and nowhere mentions Certified Public Accountants ("CPAs").

25. The Client Non-Solicit contains no geographical limitation.

26. In or about January 2020, Miller learned that Honkamp would be acquired by Blucora. *See https://www.hkfs.com/blucora/* (Jan. 7, 2020). Miller was confused by the messages she received about this acquisition, and she began to feel very uncertain about her future at Honkamp.

27. According to Blucora's website, Blucora's acquisition of Honkamp closed on July 1, 2020. In connection with that acquisition, Miller has repeatedly been asked to sign a new employment agreement with Blucora which contained even more onerous non-competition provisions than those contained in the Agreement. One of the messages she received from Honkamp about signing the new Blucora agreement was that she should sign because such agreements were not enforceable anyway. However, Miller is well aware that Honkamp has sued employees for allegedly violating the restrictive covenants they have asked employees to sign. Miller never signed the Blucora agreement.

28. Disappointed by the direction Honkamp took with the Blucora acquisition and unsure of what the future held for post-acquisition, Miller decided to pursue other opportunities.

29. On September 4, 2020, Miller terminated her employment relationship with Honkamp.

30. After terminating her employment relationship with Honkamp, Miller commenced employment with Mariner on September 4, 2020.

31. On September 5, 2020, Honkamp demanded that Miller comply with the Employment Agreement's "Negative Covenants". *See* Exhibit B and Exhibit C.

32. On September 7, 2020, Miller terminated the Employment Agreement, to the extent that contract still was in effect.

## First Cause of Action

## Declaratory Judgment under 28 U.S.C. § 2201(A)

33. Miller states and realleges the preceding paragraphs as though stated fully herein.

34. Restrictive covenants like those purporting to be contained in the Agreement are disfavored, and strictly and narrowly construed, under the law.

35. As a result, a South Dakota court has an interest in protecting South Dakota employees from anti-competitive conduct by out-of-state employers, which includes protecting South Dakota employees from any

litigation based on a restrictive covenant that would interfere with or restrict the freedom of a South Dakota employee to engage in her chosen employment.

36. This Court has the power to construe contracts under the Declaratory Judgments Act, 28 U.S.C. § 2201(a), which provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

37. A real, actual, and substantial controversy exists between Miller and Honkamp, who have adverse legal interests. The controversy between Miller and Honkamp is substantial due to its impact on commerce generally and on Miller specifically. Miller's Agreement purports to specifically prevent Miller from engaging in certain practices in any employment for Mariner. Honkamp has sued at least one employee for allegedly violating restrictive covenants when that individual left to join a competitor as a result of the Blucora transaction, and specifically requested an injunction prohibiting the individual's ability to solicit and accept business from Honkamp clients, which Honkamp alleged included Honkamp CPAs who referred business to Honkamp. Miller seeks a declaration that (a) the Agreement's prohibition on accepting business from clients is in direct contravention of South Dakota and Iowa law (the Agreement purports to be governed by Iowa law), (b) the Agreement's prohibitions on soliciting business do not apply to CPAs, and (c) the Agreement supersedes the Employment Agreement. If this Court does

Page 9 of 13

Miller v. Honkamp & Blucora
Civ. 20-5056

Amended Complaint for
Declaratory Judgment

not invalidate the non-acceptance of business provision and declare it inapplicable to CPAs and any clients with which she did not work or learn confidential information about, enjoin Honkamp from attempting to enforce it in those regards, and enjoin Honkamp from attempting to enforce the superseded Employment Agreement, Miller risks a court or tribunal enforcing the Agreement and/or the Employment Agreement, and prohibiting her from working for Mariner at all and/or accepting business from customers and soliciting or working with CPAs, thereby allowing an out-of-state competitor to limit employment and business opportunities of a South Dakota employee.

38. This Court has the ability to declare, and should declare, that the Agreement is unenforceable as written, that the Employment Agreement is void, and that Honkamp is precluded from enforcing any out-of-state judgment or injunction in South Dakota that it might obtain in a foreign court or tribunal that upholds the enforceability of the Agreement and/or the Employment Agreement in any way which conflicts with South Dakota public policy.

39. As evidenced above, the controversy between Miller and Honkamp is ripe for decision. The Agreement's prohibitions are unenforceable due to their vagueness and overbreadth, as well as to the extent Honkamp seeks to preclude Miller's ability to accept business from or solicit CPAs. The Employment Agreement was superseded by the Agreement and is void. The questions of whether the Agreement is enforceable and the Employment Agreement is void, in particular, present a controversy that is ripe for decision because Miller has started her Mariner employment with substantially the same duties she held at Honkamp, Honkamp has previously

made clear that it will sue employees who leave Honkamp to join a competitor and solicit and accept business from clients, and Honkamp has threatened to sue Miller and Mariner. Therefore, the controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment. This Court's declaratory judgments regarding the parties' rights are necessary and appropriate at this time to set to rest the respective rights and obligations of the parties.

40. Miller therefore requests, pursuant to 28 U.S.C. § 2201(a), that this Court enter judgment or decree to declare, adjudge, and order as described more fully in the Prayer for Relief below.

## Prayer for Relief

**WHEREFORE**, Miller requests entry of judgment against Honkamp as follows:

1. For a declaratory judgment that the Agreement's "Anti-Piracy Covenants" are invalid and unenforceable as written;

2. For a declaratory judgment that the Employment Agreement is void;

3. For a preliminary injunction and a permanent injunction prohibiting Honkamp's unfair competition by enjoining and precluding Honkamp from:

    a. Enforcing the Agreement in a court or tribunal located in South Dakota or in any foreign State, to the extent such enforcement would prevent Miller's ability to solicit clients with she did not work or about which she did not learn

    confidential information, or accept business from clients and solicit or work with CPAs;

  b. Enforcing the Employment Agreement in a court or tribunal located in South Dakota or in any foreign State, to the extent such enforcement would prevent Miller's ability to be employed by Mariner;

  c. Seeking an injunction in a court or tribunal located in South Dakota or in any foreign State, to the extent such injunction would prevent Miller's ability to be employed and be fully assigned work duties by Mariner;

4. For an award of compensatory damages;

5. For prejudgment interest on all damages awarded;

6. For an award of costs, disbursements, and attorneys' fees as are permitted by law; and

7. For all other and further relief as the Court deems just and equitable.

## A JURY TRIAL IS HEREBY DEMANDED

Dated this 8th day of September, 2020.

          **BANGS, MCCULLEN, BUTLER,**
          **FOYE & SIMMONS, L.L.P.**

By:   */s/ Michael M. Hickey*
       Michael M. Hickey
       Emily M. Smoragiewicz
       333 West Blvd., Ste. 400; P.O. Box 2670
       Rapid City, SD 57709
       (605) 343-1040
       Fax: (605) 343-1503
       mhickey@bangsmccullen.com
       emily@bangsmccullen.com

and

**NILAN JOHSON LEWIS PA**

Katie M. Connolly (MN Reg. No. 0338357)
Joel O'Malley (MN Reg. No. 0352573)
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
(612) 305-7500
Fax: (612) 305-7501
kconnolly@nilanjohnson.com
jomalley@nilanjohnson.com

*ATTORNEYS FOR PLAINTIFF*